111 F.3d 139
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Agustin Cesar Enrique VILCHEZ-MORA, a.k.a. Agustin Cesar
Enrique Mora-Vilches, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 95-70201.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 7, 1997.*
Decided April 15, 1997.
 
 Before: SCHROEDER, WIGGINS, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 OVERVIEW
 
 2
 Agustin Cesar Enrique Vilchez-Mora, a native and citizen of Nicaragua, petitions for review of the decision of the Board of Immigration Appeals (BIA) dismissing his appeal from an Immigration Judge's (IJ) denial of his request for asylum and withholding of deportation. We have jurisdiction under 8 U.S.C. § 1105a(a) and we deny the petition for review.
 
 FACTS AND PRIOR PROCEEDINGS
 
 3
 Vilchez-Mora is a forty-eight year old native and citizen of Nicaragua, who entered the United States without inspection on August 24, 1989. He filed an application for asylum on October 17, 1989. In support of his application, Vilchez-Mora submitted affidavits and documentation showing that he was a member of the Liberal National Party while the Somoza regime was still in power. He worked as a bodyguard for Major Doctor Rugama, a doctor for the Somoza army. Vilchez-Mora's two brothers were officers of the National Guard. After the Sandinistas came to power, Vilchez-Mora was arrested and imprisoned several times, the longest from July 1984 to April 1986. His brothers were also imprisoned for approximately seven years.
 
 
 4
 After Vilchez-Mora's release from prison, he and his wife and three children continued to live in Nicaragua. In 1989, the Sandinistas attempted to conscript Vilchez-Mora's oldest son into the army. Vilchez-Mora's wife and son then left Nicaragua and entered the United States. Vilchez-Mora followed nine months later.
 
 
 5
 In elections held February 25, 1990, the United Nicaraguan Opposition Coalition (UNO) defeated the Sandinistas and President Chamorro, representing UNO, took office.
 
 
 6
 At his deportation hearing Vilchez-Mora admitted deportability but requested asylum, withholding of deportation, or, in the alternative, voluntary departure. He, his wife, and his sister-in-law, stated that Vilchez-Mora would suffer some form of persecution if he returned to Nicaragua. On April 24, 1991, the IJ denied the request for asylum and withholding of deportation and granted voluntary departure, finding that Vilchez-Mora had not established a well-founded fear of persecution. While the IJ found Vilchez-Mora credible and that his imprisonment was on account of his political opinions, other evidence undermined his claim for asylum:
 
 
 7
 ... [Vilchez-Mora] remained in Nicaragua for over three years after he was released from prison and no further harm befell him during this time. He continued to work without problem. His wife continued to work both before and after his release from prison without problem.... [H]is two other brothers who were imprisoned for many years more than respondent continue to reside in Nicaragua. There is nothing in the record to indicate that either of these two brothers ... have suffered any further problems in Nicaragua since their release from prison....
 
 
 8
 Both respondent and his wife conceded that the reason they left Nicaragua in 1989 was because the oldest son, Rafael, was being involuntarily recruited into the military. Had they not had a son of draft age, it is certainly arguable that they would have remained in Nicaragua. The catalyst for respondent's departure from Nicaragua was not his arrest and convictions, but rather the involuntary recruitment of his oldest son by the Sandinista army....
 
 
 9
 The Court takes notice that recent events in Nicaragua have to a great degree negated the grounds for his fear of returning there. With the election of an opposition leader, Violetta Chamorro, as president, and the cessation of hostilities between the Contras and government, his fear that he may be arrested upon return now appears to be misplaced. Further, the new president of Nicaragua has announced a general amnesty covering the hostilities between the former Contra resistance and the Nicaraguan government and an end to military conscription. Given that the Sandinista party no longer governs Nicaragua, under the present circumstances, I do not find that the record now supports a finding that respondent has a well-founded fear of persecution by the Sandinista government, were he to return there.
 
 
 10
 Vilchez-Mora appealed the IJ's decision on May 2, 1991. On December 2, 1994, the BIA issued a per curiam decision dismissing the appeal. The BIA concluded that "[t]he decision of the immigration judge adequately and correctly addressed the issues raised on appeal." The BIA found that Vilchez-Mora had not shown that "a reasonable person in his circumstances would fear persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Alternatively, the Board concluded that even if the record established past persecution, the presumption of a well founded fear of persecution had been rebutted by changed political circumstances in Nicaragua. Finally, after "independent review of the record," the BIA concluded that even if there had been past persecution, asylum was not warranted based upon humanitarian considerations. Vilchez-Mora timely petitioned for review on February 27, 1995.
 
 STANDARD OF REVIEW
 
 11
 This court's review is limited to the BIA's decision. However, because the Board rested its decision on the IJ's findings, this court treats the IJ's findings as the Board's and reviews the IJ's decision. Gonzalez v. INS, 82 F.3d 903, 907 (9th Cir.1996). The IJ's determination that Vilchez-Mora was not eligible for asylum is reviewed under a substantial evidence standard. 8 U.S.C. § 1105a(a)(4). The grant or denial of asylum to a statutorily eligible applicant is within the Attorney General's discretion, and a denial is reviewed for abuse of discretion. See INS v. Cardoza-Fonseca, 480 U.S. 421, 428 n. 5, 443-45 (1987); Surita v. INS, 95 F.3d 814, 818-19 (9th Cir.1996).
 
 ANALYSIS
 
 12
 "It is the well-settled law of this circuit that eligibility for asylum may be based on past persecution alone, even absent a well-founded fear of persecution." Lopez-Galarza v. INS, 99 F.3d 954, 959 (9th Cir.1996) (citing cases); accord Matter of Chen, 20 I. & N. Dec. 16 (BIA 1989). If eligibility is established based on past persecution, "the likelihood of present or future persecution then becomes relevant as to the exercise of discretion, and asylum may be denied as a matter of discretion if there is little likelihood of present persecution." Chen, 20 I. & N. Dec. at 18; see Lopez-Galarza, 99 F.3d at 960-61; Kazlauskas v. INS, 46 F.3d 902, 906 (9th Cir.1995). If the IJ permissibly found asylum unwarranted as a matter of discretion, we need not decide the statutory eligibility question. Kazlauskas, 46 F.3d at 906.
 
 
 13
 Generally, evidence of past persecution creates a rebuttable presumption that the alien has a well-founded fear of persecution. See Chen, 20 I. & N. Dec. at 18; Osorio v. INS, 99 F.3d 928, 932 (9th Cir.1996). To rebut the presumption, "the Service ordinarily will have to present, as a factor militating against the favorable exercise of discretion, evidence that there is little likelihood of present persecution." Chen, 20 I. & N. Dec. at 18. Changed country circumstances alone may be used to rebut the presumption, id., but only where the BIA undertakes an "individualized analysis of [the asylum applicant's] situation." Osorio, 99 F.3d at 932-33.
 
 
 14
 Here the IJ found that Vilchez-Mora had been imprisoned on account of his political beliefs, but that the presumption of a well-founded fear of future persecution was rebutted by a number of factors: Vilchez-Mora remained in Nicaragua for over three years after his release from prison; neither he nor his two brothers suffered any further problems after their release from prison; Vilchez-Mora and his wife only left Nicaragua because their eldest son was being drafted into the military; and the changed political circumstances in Nicaragua. In concluding that Vilchez-Mora had not established the requisite fear of future persecution the IJ did not merely rely on the changed circumstances in Nicaragua to rebut the presumption created by Vilchez-Mora's past imprisonment. Consequently, we need not consider whether the IJ's decision adequately undertakes the "individualized analysis" called for in Osorio. Substantial evidence supports the IJ's determination that Vilchez-Mora had failed to establish a well-founded fear of persecution. Vilchez-Mora also failed to demonstrate 'severe' past persecution or other humanitarian reasons for the grant of asylum. The denial of asylum was therefore proper as a discretionary matter.
 
 CONCLUSION
 
 15
 The petition for review of the BIA's decision is denied.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3